IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KIMBERLY MOORE, TUDOR CIURESCU, REYNOLDS AMOAH, and ABDEL ABUHASHISH,** | ) ) ) ) ) |
| **Plaintiffs,** | ) ) Case No. 1:15-cv-1351 |
| v. | ) ) ) **JURY DEMANDED** |
| **VETERANS DISTRIBUTION OF CHICAGO, INC., formerly known as VETERANS MESSENGER SERVICE, INC., and WILLIAM FACTOR,** | ) ) ) ) ) |
| **Defendants.** | ) |

## COMPLAINT

Plaintiffs Kimberly Moore, Tudor Ciurescu, Reynolds Amoah, and Abdel Abuhashish complain against Defendants Veterans Distribution of Chicago, Inc., formerly known as Veterans Messenger Service, Inc. ("Veterans") and William Factor ("Factor") (collectively, "Defendants), alleging claims under the Fair Labor Standards Act, the Illinois Wage Payment Collection Act, the Illinois Minimum Wage Law, and the Illinois common law.

### Introduction

1. This Complaint arises from Defendants' misclassification of Plaintiffs as independent contractors rather than employees. For years, Veterans – a package delivery company based out of the Chicago suburbs – has employed delivery drivers to deliver packages to its customers and has classified its drivers as independent contractors rather than employees. It has classified its drivers in this manner despite exerting significant control over how the drivers perform their work.

2.     Plaintiff Ciurescu seeks to recover unpaid overtime wages, pursuant to the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL").  All Plaintiffs seek to recover unlawful payroll deductions, pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"). Finally, Plaintiffs seek to recover unpaid commissions due and owing to them under their written contracts with Veterans, pursuant to the IWPCA and the common law.

**Parties**

3.     Tudor Ciurescu worked as a delivery driver for Defendants from 2009 until 2014. From before February 1, 2012 until he stopped working for Veterans, he performed his work using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

4.     Abdel Abuhashish worked as a delivery driver for Defendants from 2002 until 2013. During relevant times, he performed his work using a vehicle with a gross-vehicle weight rating of 10,001 pounds or more.

5.     Reynolds Amoah has worked as a delivery driver for Defendants from 2011 until the present. During relevant times, he has performed his work using a vehicle with a gross-vehicle weight rating of 10,001 pounds or more.

6.     Kimberly Moore worked as a delivery driver for Defendants from approximately 2009 to 2014. During relevant times, she performed her work using a vehicle with a gross-vehicle weight rating of 10,001 pounds or more.

7.     Defendant Veterans is an Illinois corporation headquartered in Hillside, Illinois, which is located in Cook County.

8. During relevant times, Veterans was Plaintiffs' employer for purposes of the FLSA, IMWL, and IWPCA because it maintained substantial control over the manner of the drivers' work.

9. Defendant William Factor is the president of Veterans, was aware of the unlawful activity alleged herein, and, during relevant times, was Plaintiffs' employer for purposes of the FLSA, IMWL, and IWPCA. He controlled the terms and conditions of Plaintiffs' work at Veterans.

10. During relevant times, Defendants constituted an "enterprise" as that term is defined in the FLSA because they performed related activities (either through unified operation or common control) for a common business purpose – namely, operating a multi-million dollar distribution center.

## Jurisdiction and Venue

11. Venue is proper in this district because, at all relevant times, Defendants employed Plaintiffs in Cook County and this judicial district.

12. The Court has jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## Facts

13. Defendant Veterans is a company that is in the business of delivering packages and other goods by courier for its customers in the Chicagoland area.

14. During relevant times, Veterans contracted with Plaintiffs to deliver its packages on a commission basis.

15. Veterans agreed to pay Plaintiffs a percentage of the delivery charge collected from Veterans' customers for each package that Plaintiffs delivered.

### A. Veterans controlled the way that Plaintiffs performed their jobs.

16. Veterans retained substantial control over the manner of Plaintiffs' work.

17. During relevant times, Veterans required Plaintiffs to wear a particular color shirt and a particular color of pants. Veterans also insisted that the shirt bear Veterans' logo.

18. Veterans required Plaintiffs to wear the shirt while loading and sorting packages in the Veterans' warehouse and while making deliveries.

19. Veterans required Plaintiffs to display Veterans' signage on their vehicles.

20. During relevant times, Veterans required Plaintiffs to use a particular greeting when delivering Staples packages to Staples customers.

21. During relevant times, if Plaintiffs wished to take vacation, Veterans required Plaintiffs to obtain permission from Veterans' management before taking that time off work.

22. Veterans' management maintained a calendar to track Plaintiffs' vacation requests.

23. During relevant times, Plaintiffs were assigned to deliver packages in the same geographical area (generally, one or two zip codes) every weekday for months or years at a time.

24. Veterans called this geographical area the Plaintiffs' "route."

25. Veterans required Plaintiffs to arrive at Veterans' Elk Grove Village warehouse at the same time each day to pick up the packages assigned to their routes.

26. Veterans required Plaintiffs to deliver all of the packages assigned to their routes unless the packages were so voluminous or heavy that all of the packages would not fit in the Plaintiffs' vehicles.

4

27. During relevant times, Veterans required Plaintiffs to call the warehouse in the morning to confirm that they would be driving their routes and required drivers to call the warehouse at the end of the day after completing their routes.

28. Until 2012, many drivers were required to return to the Veterans warehouse at the end of each work day to return customer envelopes.

29. Veterans frequently called Plaintiffs throughout the day and instructed them to deliver certain packages before delivering other packages.

30. During relevant times, Veterans required Plaintiffs to rent particular equipment from Veterans, including a particular brand of phone/scanner, in order to carry out their job duties.

31. Veterans assessed a monetary penalty against any driver who used the phone for a non-work-related purpose.

32. Veterans communicated with package recipients and instructed drivers of any adjustments in the timing and form of delivery.

33. Veterans required Plaintiffs to purchase workers' compensation insurance from a particular third-party vendor. From 2005 – 2012, the vendor's name was NICA. In 2012, Veterans switched over to a vendor named CMS.

34. Veterans instructed Plaintiffs not to communicate with Veterans' customers about problems with their deliveries, but to refer those problems to a Veterans' customer service representative.

35. Veterans set the amount charged for each delivery, and Plaintiffs could not charge Veterans' customers any different amount for deliveries.

### B. Plaintiffs Were Employees Under the IWPCA.

36. Plaintiffs neither performed their work outside the usual course of Veterans' business nor did they perform their work outside of all the places of Veterans' business.

37. Plaintiffs performed much of their work at the Veterans' warehouse, on the road, and at Veterans' customers' office locations.

38. Plaintiffs were not engaged in an independently established trade, occupation, profession, or business.

39. Plaintiffs were an integral and central part of Veterans' business. Indeed, they provided the very service that Veterans sold to its customers.

### C. Veterans breached the terms of Plaintiffs' ICC equipment leases.

40. Veterans required Plaintiffs to enter into an equipment lease with Veterans pursuant to rules promulgated by the Illinois Commerce Commission ("ICC"). In those ICC leases, Veterans agreed to maintain exclusive possession and control of the leased equipment during all times that the equipment was operated under the lease. 92 Ill. Admin. Code 1360.40.

41. The ICC leases provided that Veterans' exclusive control also extended to the drivers of the leased equipment. 92 Ill. Admin. Code 1360.40.

42. The ICC leases indicated that "any contrary provisions in attachments or other contractual documents" to the "express terms of the lease" would be void.

43. Plaintiffs entered into an ICC equipment lease with Veterans. Those leases disclosed a fixed percentage commission that Veterans agreed to pay the Plaintiffs for each delivery that they performed.

44. Veterans breached the Plaintiffs' ICC leases by paying them less than the agreed percentage of each delivery charge that Veterans collected from its customers.

45. Specifically, Veterans refused to pay the Plaintiffs a commission on ten to twenty cents of the majority of delivery charges that it charged its customers.

46. Veterans told drivers that it was charging its customers a ten to twenty cent "package and handling fee" and that the fee was not commissionable to the drivers.

47. In reality, however, Veterans never charged its customers a package and handling fee. Instead, Veterans simply refused to pay the Plaintiffs their full commission on ten to twenty cents of each delivery charge, in violation of the ICC leases.

48. The Illinois Administrative Code required Veterans to indicate in the ICC leases the responsibility of the "lessee and the lessor for payment of expenses incurred in providing transportation service, either directly or through deductions," including rentals, fuel costs, tolls, insurance, and any other expenses related to the transportation."

49. As a matter of law, the leases required Veterans to pay for the expenses of Plaintiffs' transportation service, unless the lease expressly made those expenses the responsibility of Plaintiffs. 92 Ill. Admin. Code § 1360.40.

50. None of the Plaintiffs' ICC leases expressly made Plaintiffs responsible for the phone equipment rentals or NICA/CMS insurance that Veterans deducted from Plaintiffs' wages.

51. Veterans breached Plaintiffs' ICC leases by deducting from their wages the cost of a phone and for a fee paid to NICA or CMS.

52. Plaintiffs performed all obligations required of them under their contracts with Veterans.

### D. Veterans' Illegal Deductions

53. Defendants made numerous deductions from all Plaintiffs' wages.

7

54. Defendants deducted up to $46 per week from Plaintiffs' wages for use of electronic equipment that Veterans supplied them.

55. Defendants deducted significant amounts (sometimes hundreds of dollars a year) from the Plaintiffs' wages for lost or broken freight.

56. Defendants deducted amounts from certain Plaintiffs' wages for the cost of driving tickets.

57. Defendants deducted amounts from the Plaintiffs' wages for the cost of NICA/CMS insurance required by Defendants.

58. Plaintiffs did not give their express written consent for these deductions at the time that the deductions were made, as required by Section 9 of the IWPCA.

### E. Defendants' Failure To Pay Overtime Premium Pay

59. Plaintiff Ciurescu routinely worked for Defendants in excess of forty hours in a workweek.

60. From February 2012 until he stopped working for Veterans in 2014, Ciurescu performed work for Veterans using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

61. Defendants never paid Ciurescu one-and-a-half times their regular hourly rate of pay for hours worked in excess of forty in a workweek.

62. Defendants misclassified Ciurescu as an independent contractor even though they knew that they retained substantial control over his work.

63. Defendants never maintained the employment records required by 29 C.F.R. § 516.2 and 56 Ill. Admin. Code § 210.700(f) for Plaintiffs' work.

### Count I – Fair Labor Standards Act
### (Brought By Ciurescu against Defendants Veterans and Factor)

64. Plaintiff Ciurescu incorporates all prior allegations as if fully stated herein.

65. Defendants employed Ciurescu because they permitted him to work for them as a delivery driver and exerted substantial control over the manner in which he performed his work.

66. During relevant times, Ciurescu performed work for Veterans using vehicles with a gross vehicle weight rating of 10,000 pounds or less.

67. Ciurescu regularly worked for Defendants in excess of forty hours in a workweek.

68. Defendants never paid Ciurescu one-and-a-half times his regular hourly rate for hours worked in excess of forty in a workweek.

69. Defendants' FLSA violations were willful.

### PRAYER FOR RELIEF

Plaintiff Ciurescu asks the court to enter judgment against Defendants and issue an order:

a. Entering judgment in the amount of all unpaid overtime wages due and owing to Ciurescu as well as all applicable liquidated damages;

b. Declaring that Defendants' conduct violated the FLSA;

c. Awarding Ciurescu his reasonable attorneys' fees and costs of this action;

d. Awarding pre-judgment and post-judgment interest on all monetary amounts awarded in this action; and

e. Awarding such other and further relief as this Court deems appropriate and just.

### Count II – Illinois Minimum Wage Law
### (Brought By Ciurescu
### Against Defendants Veterans and Factor)

70. Ciurescu incorporates all prior allegations as if fully stated herein.

9

71. Defendants employed Ciurescu because they permitted him to work for Defendants as a delivery driver and exerted substantial control over the manner in which he performed his work.

72. During relevant times, Ciurescu performed work for Veterans using a vehicle with a gross vehicle weight rating of 10,000 pounds or less.

73. Ciurescu regularly worked for Defendants in excess of forty hours in a workweek.

74. Defendants never paid Ciurescu one-and-a-half times his regular hourly rate for hours worked in excess of forty in a workweek.

## PRAYER FOR RELIEF

Plaintiff Ciurescu asks the court to enter judgment against Defendants and issue an order:

a. Declaring that the actions complained of herein violate 820 ILCS 105/4;

b. Awarding Ciurescu compensatory damages in an amount be determined at trial;

c. Awarding Ciurescu prejudgment interest on the back wages in accordance with 815 ILCS 205/2;

d. Awarding Ciurescu unpaid wages due as provided by the IMWL;

e. Awarding penalties in the amount of 2% of all unpaid wages for each month the unpaid wages remain delinquent, as contemplated by 820 ILCS 105/12(a);

f. Awarding reasonable attorneys' fees and costs of this action as provided by the IMWL;

g. Awarding such other relief as this Court deems just and proper.

## Count III – Illinois Wage Payment and Collection Act
### (Brought By All Plaintiffs Against Defendants Veterans and Factor)

75. Plaintiffs incorporate all prior allegations as if fully stated herein.

76. Defendants employed all Plaintiffs, for purposes of the IWPCA, because (1) they permitted them to work for Defendants as delivery drivers and exerted substantial control over

10

the manner in which they performed that work, (2) Plaintiffs were not in an independently established trade, occupation, profession, or business, and (3) Plaintiffs did not perform work outside all of Defendants' places of business or outside the usual course of Defendants' business.

77. Defendants did not pay Plaintiffs all commissions as agreed upon in their ICC leases.

78. Defendants deducted amounts from Plaintiffs' wages without their express written consent at the time of the deductions, in violation of Section 9 of the IWPCA.

## **PRAYER FOR RELIEF**

Plaintiffs ask the court to enter judgment against Defendants and issue an order:

a. Declaring that the actions complained of herein violated the IWPCA, 820 ILCS 115/3, 4 & 9;

b. Awarding Plaintiffs all amounts unlawfully deducted from their wages, as provided by the IWPCA;

c. Awarding Plaintiffs all commissions due and owing under the ICC leases;

d. Awarding all Plaintiffs penalties in the amount of 2% of all unpaid wages for each month the unpaid wages remain delinquent, as contemplated by 820 ILCS 115/14(a);

e. Requiring Defendants to pay all statutorily-required wages and enjoining Defendants from future IWPCA violations;

f. Awarding all Plaintiffs prejudgment interest on the back wages in accordance with 815 ILCS 205/2;

g. Awarding the attorney's fees and costs of this action as provided by Section 14 the IWPCA; and

h. Awarding such other relief as this Court deems just and proper.

## **Count IV – Breach of Contract**
### **(Brought By Plaintiffs Against Defendant Veterans)**

79. Defendant Veterans entered into written contracts with Plaintiffs purporting to govern these Plaintiffs' work for Veterans.

11

80. These contracts provided that Plaintiffs would receive a certain percentage of all delivery charges collected by Veterans for deliveries performed by that driver.

81. Veterans did not pay Plaintiffs all commissions as agreed upon in their written contracts.

82. The Plaintiffs performed their obligations under the contracts, such that they were entitled to receive the unpaid commissions.

83. Veterans breached its contracts with Plaintiffs by understating the amount of fees charged to and collected from its customers and by not paying commissions on twenty cents per delivered package.

## **PRAYER FOR RELIEF**

Plaintiffs ask the court to enter judgment against Veterans and issue an order:

a. Declaring that Veterans breached its contracts with Plaintiffs;

b. Awarding Plaintiffs economic damages, including all unpaid commissions due and owing, in an amount to be determined at trial;

c. Awarding Plaintiffs prejudgment interest on the damages in accordance with 815 ILCS 205/2; and

d. Awarding such other relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand trial by jury on all issues as to which a jury trial is available.


Respectfully submitted,

/s/Christopher J. Wilmes_____
One of the Attorneys for the Plaintiffs

Matthew J. Piers (Illinois Bar No. 2206161)
Christopher J. Wilmes (Illinois Bar No. 6287688)
HUGHES, SOCOL, PIERS, RESNICK & DYM, LTD.
Three First National Plaza
70 West Madison Street
Suite 4000
Chicago, Illinois 60602
312-580-0100